UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| LITTLE CAESAR ENTERPRISES, INC., a Michigan corporation, | ) ) ) | CIV. 12-4111-KES |
| Plaintiff, | ) ) | |
| vs. | ) ) | ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY |
| SIOUX FALLS PIZZA COMPANY, INC., a South Dakota corporation; and JAMES FISCHER, a South Dakota citizen, | ) ) ) ) | RESTRAINING ORDER OR PRELIMINARY INJUNCTION |
| Defendants. | ) ) ) | |

Plaintiff, Little Caesar Enterprises, Inc. (Little Caesars), moves for a

temporary restraining order or preliminary injunction enjoining defendants,

Sioux Falls Pizza Co., Inc., and James Fischer (collectively SFPC), from offering

all day, every day ready-for-pick-up pizzas because plaintiff alleges that

defendants' use of its "system" misappropriates Little Caesars' trade secrets.

Docket 2. Little Caesars also asks the court to require defendants to modify the

interior and exterior of its location to sufficiently distinguish it from Little

Caesars' trade dress. Docket 2. SFPC resists that motion and claims that Little

Caesars' system is not the type of information that constitutes a trade secret

and that it completely altered the appearance of its store to distinguish it from

Little Caesars. Docket 19. SFPC asserts that Little Caesars cannot satisfy the

*Dataphase* factors such that a preliminary injunction is appropriate. SFPC also

argues that the trade dress claim is moot because SFPC has voluntarily made

changes to its location. For the following reasons, the motion for a temporary restraining order or preliminary injunction is denied.

## BACKGROUND

The pertinent facts to this order are as follows:

Little Caesar Enterprises, Inc., is a corporation organized under the laws of Michigan, and its principal place of business is in Detroit, Michigan. Little Caesar Enterprises, Inc., is the national franchisor of the pizza restaurants that operate under the name Little Caesars. Little Caesars restaurants come in many types, but most Little Caesars locations operate under a carryout only format. This carryout format makes Little Caesars restaurants dependent upon the "Hot-N-Ready" pizza offering that provides a significant portion of Little Caesars' revenue and is the center of this litigation.

Sioux Falls Pizza Co., Inc., is a company incorporated under the laws of South Dakota with its principal place of business in Sioux Falls, South Dakota. James Fischer is the sole shareholder of SFPC. SFPC, then operating under the name Pinnacle Pizza,[1] formed in 1991 to purchase three existing Little Caesars restaurants in Sioux Falls. In June of 1991, SFPC executed three separate franchise agreements with Little Caesars. SFPC's license to operate these franchise stores expired on June 4, 2012. Immediately following the expiration of SFPC's franchise agreements on June 4, 2012, Fischer opened a competing pizza restaurant called Pizza Patrol at the location of one of his former Little Caesars' franchises on 10th Street and Cliff Avenue in Sioux Falls. Docket 1

---

[1] Fisher changed the name of his business from Pinnacle Pizza Company, Inc., to Sioux Falls Pizza Company, Inc., in April of 2011. Docket 4 at 3 n.1.

¶ 32; Docket 20 at 2. There Fischer sells all day, every day ready-for-pick-up pizza[2] as well as numerous other items that are not sold by Little Caesars and are not ready-made. It is undisputed that all Pizza Patrol trademarks, recipes, food products, and product specifications are licensed to Fischer by Orion Foods. Docket 20 at 2.

The alleged trade secret at issue in this case is the use of a concept developed within Little Caesars that is now known as the "Hot-N-Ready" system (the system).[3] Little Caesars and Fischer have been entangled in legal disputes surrounding the ownership and use of the Hot-N-Ready system and Fischer's franchise agreements since approximately 2004.[4]

---

[2] The only "ready-to-go" products that Pizza Patrol currently sells are medium cheese and pepperoni pizzas. These are the only items on the Pizza Patrol menu that Little Caesars currently claims is produced using its trade secret system.

[3] Little Caesars admits that the concept of having hot whole pizzas available to be purchased all day, every day, is not a novel concept or trade secret, but that the process of how to do so in a competitive and profitable way is a trade secret. Docket 4 at 3.

[4] In their most recent litigation, SFPC sued Little Caesars for declaratory relief that it was entitled to renew its franchise agreements or that it was relieved of its right not to compete and that it did not have to re-sell certain items to Little Caesars. *Sioux Falls Pizza Co. v. Little Caesar Enters., Inc.*, ____ F. Supp. 2d ____, 2012 WL 871753, at *1 (D.S.D. Mar. 14, 2012). The court found in favor of Little Caesars on most issues, but determined that SFPC could compete with Little Caesars because Little Caesars " 'elect[ed] not to oppose' Sioux Falls Pizza's summary judgment motion seeking to declare the non-compete language unenforceable." *Id.* at *9. That action became final in June of 2012 when the court entered a judgment of dismissal. *Sioux Falls Pizza Co. v. Little Caesar Enters., Inc.*, Civ. No. 11-4047, Docket 71.

Development of the Hot-N-Ready system began in 1997, when Little Caesars asked its franchisees to share information about successful sales promotions, including ready-for-pick-up pizzas, in preparation for a series of regional franchisee workshops. Docket 4 at 4. Many Little Caesars franchisees, including SFPC, were offering these all day, every day, ready-for-pick-up pizzas at a low price point one day per week as a customer appreciation day promotion. Because numerous franchisees were already developing ready-for-pick-up pizza promotions, Little Caesars began developing a process and system to sell all-day, ready-for-pickup pizza every day of the week.

By 2000, many franchisees were offering Hot-N-Ready sales promotions a few days a week and the concept had grown to the point where Little Caesars required its franchisees to report weekly Hot-N-Ready sales. In June of 2000, Little Caesars distributed a Hot-N-Ready Implementation Guide to all of its franchisees, including SFPC, which explained how to effectively conduct the Hot-N-Ready promotion. From 2001 to 2003, Little Caesars began experimenting in some of its company-owned stores by offering ready-for-pick-up pizza all day, every day. As a result, Little Caesars had to adjust its recipes, kitchens, equipment, and staffing needs. In 2002, the Hot-N-Ready operating system was introduced to all company-owned stores and in 2003 to franchisees.

According to Little Caesars, the "system" determines what franchisees must prepare on a daily and hourly basis and how to prepare each product.[5]

_____

[5] Dan Walker, the director of training and development for Little Caesars, stated in his declaration that the "system" consists of "training, operations, cost and pricing, marketing, inventory process, set-up, lay-out and equipment used within a Little Caesar restaurant." Docket 3 ¶ 7.

Each franchisee must have a system so it is not guessing what will be sold each hour because the waste associated with that operation style would not sustain an all day, every day ready-to-pick-up pizza product. The most important part of the system, according to Little Caesars, is what product it must prepare on an hour-by-hour basis. The system would include, for example, how much pepperoni pizza, cheese pizza, crazy bread, and chicken wings that the franchisee should prepare during the day and when each component of the preparation process should occur. The system has a methodology for calculating specific preparation requirements based on each franchise location. Little Caesars also claims that the preparation, storing, and cooking of products is inherent to the system. Little Caesars believes that without the system and the specifications as to how to let the dough rise, how to apply sauce and toppings, and how to cook and store the pizza, a restaurant simply could not operate profitably in an all day, every day ready-for-pickup pizza market.

Following the opening of Pizza Patrol in June of 2012, Little Caesars personnel visited the store and took photographs of claimed similarities between Pizza Patrol and Little Caesars. Little Caesars personnel stated that day that Fischer had not changed or altered the "distinctive" floor and wall tiles, the location of the ordering counter within the store, the configuration of equipment, and the general layout that encapsulates Little Caesars' signature trade dress. Docket 4 at 3, 8. On June 25, 2012, Little Caesars filed its complaint. Docket 1. That same day, Little Caesars moved for a temporary restraining order or a preliminary injunction to prevent SFPC from misappropriating its trade secrets or violating its trade dress rights. Docket 2.

5

**DISCUSSION**

"A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." *Roudachevski v. All-American Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citing *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). To determine whether a preliminary injunction is appropriate the court considers the following factors:

(1)     whether the movant is 'likely to prevail on the merits';

(2)     the threat of irreparable harm to the movant;

(3)     the state of balance between this harm and the injury that granting the injunction will inflict on the other parties litigant; and

(4)     the public interest.

*TCF Nat'l Bank v. Bernanke,* 643 F.3d 1158, 1162 (8th Cir. 2011) (citing *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 733 (8th Cir. 2008); *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)).

The *Dataphase* test for preliminary injunctive relief is a flexible analysis. *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 601 (8th Cir. 1999). No single *Dataphase* factor is dispositive, but the preliminary injunction fails without a showing of the threat of irreparable harm by the plaintiff. *Dataphase*, 640 F.2d at 114 n.8; *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998).

## I.    Likelihood of Success on the Merits

"The most important of the *Dataphase* factors is the . . . likelihood of success on the merits." *Shrink Mo. Gov't PAC v. Adams*, 151 F.3d 763, 764 (8th Cir. 1998). The litigant bringing the claim need not show that he or she will ultimately win the case, rather, "at the early stage of a preliminary injunction motion, the speculative nature of this particular inquiry militates against any wooden or mathematical application of the test." *United Indus. Corp.*, 140 F.3d at 1179.  A court should instead "weigh the case's particular circumstances to determine whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.* (internal citations and quotations omitted). "Probability of success on the merits" in this context means that the moving party must show it has "a 'fair chance' of success on the merits[.]" *Planned Parenthood*, 530 F.3d at 731. A "fair chance of prevailing" does not mean a greater than 50 percent likelihood of prevailing on the merits of the claim. *See id.* at 731 (citing *Dataphase*, 640 F.2d at 113). Little Caesars bears the burden of showing that it has a fair chance of proving that defendants misappropriated its trade secrets and violated its trade dress rights.

### A.    Trade Secret

Little Caesars argues that its system for preparing and selling ready-for-pick-up, whole pizzas in a competitive fashion is the type of information that is protected under the South Dakota Trade Secrets Act, and its system was misappropriated by SFPC. SFPC claims that it did not misappropriate this information because SFPC has gone to great lengths to distance itself from Little

7

Caesars to make Pizza Patrol a completely distinct business. SFPC also contends that Little Caesars' alleged trade secret was not expressed with sufficient detail. It is the sort of information that is generally known to those in the restaurant industry; therefore, there can be no misappropriation of it.

Under the South Dakota Uniform Trade Secrets Act, individuals can be enjoined from actual or threatened misappropriation of a trade secret. SDCL 37-29-2. In South Dakota, a "trade secret" is "information, including a formula, pattern, compilation, program, device, method, technique or process" that:

(i)     Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(ii)    Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

SDCL 37-29-1(4). "The burden is upon [Little Caesars] to show the existence of a trade secret." *Weins v. Sporleder*, 569 N.W.2d 16, 20 (S.D. 1997) (citations omitted). Misappropriation can either be:

(i)     Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(ii)    Disclosure or use of a trade secret of another without express or implied consent by a person who:

(A)    Used improper means to acquire knowledge of the trade secret; or

(B)    At the time of disclosure or use, knew or had reason to know that such knowledge of the trade secret was: (I) Derived from or through a person who had utilized improper means to acquire it;

8

(II) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
(III) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C) Before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake[.]

SDCL 37-29-1(2).

" 'Without a proven trade secret, there can be no action for misappropriation, even if defendants' actions were wrongful.' " *Daktronics, Inc. v. McAfee*, 599 N.W.2d 358, 361 (S.D. 1999) (quoting 10 Stuart M. Speiser, et al., <u>The American Law of Torts</u> § 34:23 at 89 (1993)). "An injunction is inappropriate if plaintiff fails to identify specific trade secrets and instead produces long lists of general areas of information which contain unidentified trade secrets." *Watkins, Inc. v. Lewis*, Civ. No. 02-3708, 2002 WL 31319491, at *13 (D. Minn. Oct. 11, 2002) (citation omitted). "General knowledge within an industry does not constitute trade secrets." *Int'l Bus. Mach. Corp. v. Seagate Tech., Inc.*, 941 F. Supp. 98, 101 (D. Minn. 1992) (citation omitted).

The court first must decide if the system is the type of information that could constitute a trade secret and specifically whether it derives independent economic value and whether there were reasonable methods to protect that information's secrecy from others. If both factors are established, then the court must examine whether SFPC misappropriated that information in violation of South Dakota law.

Little Caesars has come forward with minimal proof that its system in producing Hot-N-Ready pizza could be the type of information that is a method, technique, process, or program under a broad view of the definition of trade secret. The most specific information given to the court by Little Caesars about the system is that its "calculations specify how many pepperoni pizzas, cheese pizzas, crazy bread and chicken wings the franchisee should prepare and when each component of the preparation process should occur." Docket 4 at 5. The system also includes that the pizza dough is specially prepared, specially stored, and allowed to rise for a specific period of time. Then the sauce and toppings have to be applied in a special way and cooked for a specific amount of time.[6] Finally, the finished product must be stored in accordance with the specifics of the system.[7] Docket 4 at 5. Little Caesars also stated during oral argument that it believed the trade secret is the process of profitably or successfully selling an all day, every day ready-for-pick-up pizza at a low price point. Later when pressed, Little Caesars argued that the protectable trade secret also included the "projection" or "build-to" charts and other internal proprietary documents within the system that helped franchisees determine their expected flow of traffic and otherwise predict business patterns.

---

[6] Little Caesars did not offer evidence of how the toppings should be applied to the pizzas or how the product should be cooked to make the process adhere to the standards of the Hot-N-Ready system.

[7] Little Caesars did not submit direct evidence of how pizza should be stored according to the system.

### 1. Independent Economic Value

Most pertinent to the South Dakota statutory definition of trade secret is that Little Caesars must make a showing that the information within its system was not generally known and has independent economic value. While Little Caesars' explanations of what the system is could constitute "information" because it is a process, formula, method, or technique, Little Caesars was not specific enough to meet the high burden of likelihood of success on the merits for a preliminary injunction analysis.

First, Little Caesars did not make a clear showing of, and the court could not discern, specifically which information within Little Caesars' system is "not generally known." *See Weins*, 569 N.W.2d at 20 (stating that "there was never a clear assertion as to what exactly was claimed to be the trade secret."). General references to preparation, timing, and amounts of food per hour to minimize waste is not specific enough to constitute a trade secret and would not classify as being "not generally known." Little Caesars has brought forth evidence that its system has economic value[8] because its business is successful and it claims

---

[8] Little Caesars argues that there has to be economic value in its alleged trade secret system because SFPC has experienced success operating an all day, everyday ready-made pizza restaurant while other national chains with significant funding have failed in the past. Docket 4 at 9. First, Little Caesars has not established that national chains have tried their exact business model and failed. Little Caesars only made bald assertions that CiCi's Pizza, Pizza Patron, and others "tried to compete" with Little Caesars and failed. Second, Little Caesars has brought forth no factual support that SFPC has "miraculously [experienced success] in their first week of operations." Docket 4 at 9. In fact, Fischer testified that sales are declining and that SFPC is making significantly less profit as an independent store than it did as a Little Caesars franchisee. This evidence is not "concrete" evidence that Little Caesars' system has independent economic value that is not generally known nor is it evidence

to have a substantial market share of the carryout pizza industry. Little Caesars has not distinguished, however, how that system has brought them specific economic value above and beyond the generic knowledge of how to run a restaurant that provides ready-made pizza.

Little Caesars did not put on any evidence that SFPC was using any type of computer software, complex manufacturing process, or otherwise unique, secret, or complicated system while prepping, making, and selling all day, every day, ready-made pizza. *See Paint Brush Corp. v. Neu*, 599 N.W.2d 384, 390 (S.D. 1999) (noting specific components of a manufacturing process that were secret and unique to the industry when undertaking a determination as to whether the process was a trade secret). Although Little Caesars discussed its projection charts or graphs within its system at length during the hearing for preliminary relief, Little Caesars never entered these documents into evidence. The court has not seen the charts or the projections that Little Caesars claims is so valuable or integral to its system. Nor did Little Caesars put on any evidence of tangible items or objects that Little Caesars developed that it could prove SFPC was misusing to operate Pizza Patrol. Little Caesars' description of what makes up its system is too generic or general to amount to a trade secret under the evidence presented at this stage of the litigation.

_____

that Little Caesars will succeed on the merits of its claims.

Moreover, the evidence presented in the hearing demonstrated that Pizza Patrol proofed[9] or sheeted out its dough, let it rise in the pan, spread on sauce, cheese, and toppings, baked the pizza, and put it under a heat lamp in preparation for sale. Dan Walker's testimony that he observed Pizza Patrol employees sheeting or proofing its crust in the same manner as Little Caesars[10] is not sufficient proof of misappropriation because there was evidence that many proprietors of pizza restaurants[11] prepare their dough in the same manner. At this stage in the litigation, Little Caesars only presented evidence that its system is a general or common sense way of preparing and making pizza or that defendants were doing nothing more than what every other pizza proprietor in the restaurant business accomplishes. *See Daktronics*, 599 N.W.2d at 362 ("The first subsection [of SDCL 37-39-1(4)] requires there to be economic value that is not readily ascertainable by other means" and "this requirement precludes trade secret protection for information generally known within an industry even if not to the public at large.") (internal quotations and citations omitted). *See also*

---

[9] The general usage of this term means that the dough was sheeted out or cut to size, and the yeast was allowed to rise.

[10] While Little Caesars claims that SFPC misappropriated its complex projection charts and data to anticipate customer traffic, SFPC asserts that it does not use a complex system to determine what food to have on hand for pick-up and when to have it ready. SFPC stated that it has a few pizzas ready around lunch or dinner time and as a pizza is sold the restaurant preps and cooks additional pizza.

[11] Fischer stated during his direct testimony that he knows of hundreds of pizza restaurants who proof their pizza in this manner, including his own direct knowledge that this was the proofing process used by Pizza Hut during his nine-year tenure there.

*Watkins, Inc.*, 2002 WL 31319491, at *13 ("An injunction is inappropriate if plaintiff fails to identify specific trade secrets and instead produces long lists of general areas of information which contain unidentified trade secrets.") (citation omitted).

Additionally, neither party disputes that SFPC was creating a completely distinct product at Pizza Patrol than it made as a Little Caesars franchisee even though both finished products are all day, every day whole pizzas that are ready for pick-up. There was testimony that the dough was different, the sauce and cheese were different, and the toppings were different. Little Caesars admitted that it did not believe that SFPC was creating a similar final product with its ready-made pizzas. *See Weins*, 569 N.W.2d at 24 ("[Plaintiff] has not shown that [defendants] actually used the formula" and "[s]ince [defendants'] end product was at least somewhat different from [plaintiff's] product, it is clear that independent thought was used to obtain the result."). Although Little Caesars cannot show that its system derives independent economic value, the court will also analyze the second statutory factor of what constitutes a trade secret because Little Caesars also cannot clearly establish that factor.

### 2. Reasonable Efforts to Maintain Secrecy

The second factor in a misappropriation analysis is whether Little Caesars established reasonable efforts to maintain the secrecy of its system. "Reasonable efforts to maintain secrecy need not be overly extravagant, and absolute secrecy is not required." *AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp.*, 663 F.3d 966, 974 (8th Cir. 2011); *see also Raven Indus., Inc. v. Lee*, 783 N.W.2d 844, 850 (S.D. 2010) ("Under the UTSA [Uniform Trade Secret Act], absolute secrecy . . . is

not required."). "The UTSA only requires reasonable efforts to keep secret, confidential, or proprietary information from general dissemination." *Raven*, 783 N.W.2d at 850.

Little Caesars took some steps to safeguard its proprietary information by forcing all franchisees to sign confidentiality agreements about the system and Little Caesars' business practices, but that confidentiality did not extend to all employees with direct exposure to the system. In SFPC's franchise agreement with Little Caesars it "covenant[ed] that it shall never, under any circumstances, disclose to any unauthorized party, or use in any other than the best interest of the Little Caesars System, any of the trade secrets or confidential information of Little Caeser licensed herein or divulged to, or acquired by it by virtue of the relationship between the parties." Docket 1 ¶ 28. The franchise agreement[12] also required that franchisees admit that any improvements made to the system, including improvements developed by that franchisee, are property of Little Caesars. Little Caesars also claimed that any material in the Operational

---

[12] Paragraph V.F of the Franchise Agreement provides:

> Any and all improvements or modifications in the LITTLE CAESAR system, franchise trade secrets, or know-how licensed hereunder whether made by LITTLE CAESAR or Franchise Owner or by another LITTLE CAESAR licensee, shall be and become the sole property of LITTLE CAESAR which shall have the sole and exclusive right to patent, copyright, register, or otherwise protect the same . . . .

Docket 4 at 7.

Resource Guide[13] is protected because the word "confidential" is on the cover and repeated on some pages within the manual. Docket 4 at 7.

Although the franchisees were those charged with upholding the Little Caesars brand and implementing any terms of the franchise agreement, it was the employees of Little Caesars who actually prepared and completed each step in the system. Those employees prepared the dough, applied toppings, baked the product, sold it to customers, and determined when product was no longer fresh enough to keep. Thus, those with the most detailed knowledge of Little Caesars' system were people who had no duty or promise to keep that information confidential because they were not required to sign confidentiality agreements and did not have access to the "confidentially" marked operations guide. *Cf. Paint Brush Corp.*, 599 N.W.2d at 390 (noting that the manufacturer "required all of their own employees to sign a document entitled 'Employment Agreement (Trade Secrets and Restrictive Covenant)' " that discusses trade secrets and confidential information). For that reason and on the evidence presented at this stage of the litigation, Little Caesars cannot show that the system "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

Like the plaintiffs in *Daktronics* or *Weins*, Little Caesars has not brought forth any evidence that its system is any more than a conglomeration of information that was already in the public knowledge and aggregated by Little

_____

[13] Little Caesars did not offer its Operational Resource Guide into evidence, so the court is not able to tell how prominent the word confidential was or upon how many pages the word appeared throughout the guide.

Caesars into what it calls its system. Little Caesars did not establish through the evidence its position on what specifically was its trade secret, and the little information Little Caesars did provide appears to be a common method for making pizza generally known in the restaurant business. Without more proof at this stage of the litigation, Little Caesars cannot sustain its burden of showing that it is likely to succeed on the merits of its claim. Because the court has determined that Little Caesars has not offered sufficient evidence that the "system" in question is a trade secret with independent economic value or established its reasonable efforts to maintain its secrecy, the court does not have to analyze whether SFPC misappropriated that information. *See Daktronics*, 599 N.W.2d at 361 ("Without a proven trade secret, there can be no action for misappropriation, even if defendants' actions were wrongful.").

### B. Trade Dress

Little Caesars claims that SFPC has failed to alter the trade dress of Pizza Patrol to remove the distinctive features or dress of the store that are unique to or associated with Little Caesars, which infringes upon Little Caesars' trade dress rights. SFPC argues that it has worked to remodel the interior and exterior of the store after its franchise agreement expired, and an injunction is not necessary because the claim became moot by defendants' own voluntary conduct.

Section 43(a) of the Lanham Act gives litigants a federal cause of action when trade dress rights are infringed upon. *Insty*Bit, Inc. v. Poly-Tech Indus., Inc.*, 95 F.3d 663, 667 (8th Cir. 1996). "Trade dress is the 'total image of a product, the overall impression created, not the individual features.' "

*Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 868 (8th Cir. 1994) (quoting *Woodsmith Publ'g Co. v. Meredith Corp.*, 904 F.2d 1244, 1247 (8th Cir. 1990)). A company's style and method of doing business cannot be protected under trade dress nor can it protect one business from imitating another's marking concept. *Prufrock Ltd., Inc. v. Lasater*, 781 F.2d 129, 131-32 (8th Cir. 1986). To obtain relief for trade dress infringement, the plaintiff must show that: "(1) its trade dress is either inherently distinctive or has acquired secondary meaning; (2) that the trade dress is nonfunctional; and (3) that defendant's imitation of the trade dress 'creates a likelihood of confusion in consumers' minds as to the origin of the services.' " *Stuart Hall Co., Inc. v. Ampad Corp.*, 51 F.3d 780, 783 (8th Cir. 1995) (quoting *Prufrock*, 781 F.2d at 132; *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992)).

SFPC stated that after the Little Caesars franchise closed on June 3 and before it opened again on June 4 as Pizza Patrol, Fischer removed all of Little Caesars' signs, point of purchase materials, menu boards, paper goods, and other marks from the location on 10th St. and Cliff Ave. Docket 20 at 2. Fischer also noted that any leftover Little Caesars food products were removed from the store and sold to a new franchisee. Following June 4, Fischer said that he remodeled the exterior and interior of the store to alter it from Little Caesars to a Pizza Patrol. Specifically, SFPC changed the entryway and lobby tile, the wall stripes, the exterior color stripes around the building, the menu boards and front counter, and any other elements that could be associated with Little Caesars' trade dress. Little Caesars expressed concern that the arch on the exterior of the building was associated with Little Caesars, but the evidence

shows that SFPC has now had the arch altered by a contractor. SFPC also put up exterior and interior Pizza Patrol signs and claims that it has actively advertised to customers and the general public that it is a new business without ties to Little Caesars. Docket 20 at 2.

The court need not analyze the three factors necessary to prove an infringement of trade dress rights because Little Caesars offered no evidence of specific trade dress requirements mandated by Little Caesars that were either typical or required in each company-owner store or franchise. Little Caesars submitted no evidence to the court of a written policy, manual, guide, or other direct proof of Little Caesars' standard trade dress. All that was offered was the testimony of Dan Walker, who testified that the Pizza Patrol store looked similar to a Little Caesars franchise at 10th and Cliff as it existed prior to June 4. Evidence that some features of the current Pizza Patrol are still similar to the look and feel of the store when it was a Little Caesars is not enough to establish that Little Caesars has a fair chance of succeeding on its trade dress infringement claim.

The parties were left to argue about the wall and floor tile color, the layout of the store, and other minute details. Walker testified that the black and white tile pattern in Pizza Patrol was associated with Little Caesars trade dress; however, Little Caesars offered no proof whatsoever that the black and white tile is a scheme or pattern that is clearly associated with Little Caesars. Little Caesars also claimed that the floor tiling that SFPC changed from yellow and black to red and black was not a substantial enough change from Little Caesars' standard tiling and would confuse customers. Little Caesars did not establish

through the evidence that the black and yellow tile was closely identified with Little Caesars, let alone that SFPC's current tile continued to infringe upon Little Caesars' trade dress rights. Additionally, Little Caesars admitted that it never found a napkin, pizza box, sign, or anything else with distinctive marks or proven dress that could be legitimate evidence of a trade dress violation. Without more at this stage of the litigation, Little Caesars' trade dress claim is not likely to succeed on the merits.

After analyzing Little Caesars' claims of both misappropriation of trade secrets and infringement of trade dress rights, the court finds that at this stage of the litigation Little Caesars has not carried its burden to show that it is likely to prevail on the merits of its claims. *See Gen. Motors. Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 316 (8th Cir. 2009) (citing *Watkins*, 346 F.3d at 844) ("The party seeking a preliminary injunction bears the burden of establishing the necessity of this equitable remedy."). This factor weighs in favor of denying the request for a preliminary injunction. *See CDI Energy Servs. v. W. River Pumps, Inc.*, 567 F.3d 398, 402 (8th Cir. 2009) ("With no likelihood of success on the merits, there is little justification for granting a preliminary injunction regarding the trade-secret claim.").

## II.     **Threat of Irreparable Harm**

The other key factor that a movant must always prove under *Dataphase* is that "he is likely to suffer irreparable harm in the absence of preliminary relief[.]" *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). " 'Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated

through an award of damages.'" *Rogers Group, Inc. v. City of Fayetteville, Ark.*, 629 F.3d 784, 789 (8th Cir. 2010) (quoting *General Motors Corp.*, 563 F.3d at 319). If a party can establish that "the harm is certain and great and of such imminence that there is a clear and present need for equitable relief[,]" then irreparable harm is shown. *Iowa Utils. Bd. v. F.C.C.*, 109 F.3d 418, 425 (8th Cir. 1996).

The potential of losing consumer good will qualifies as irreparable harm. *Id.* at 426. A future or potential fear of harm is not enough, and plaintiff "must make a showing of actual, substantial harm from the alleged infringement." *Travelers Express Co. v. Transaction Tracking Techs., Inc.*, 305 F. Supp. 2d 1090, 1095 (D. Minn. 2003); *see also In re Travel Agency Comm'n Antitrust Litig.*, 898 F. Supp. 685, 689 (D. Minn. 1995) ("[A]n injunction cannot issue based on imagined consequences of an alleged wrong."). "Failure to show irreparable harm is an independently sufficient ground upon to deny a preliminary injunction." *Watkins Inc.*, 346 F.3d at 844.

Little Caesars asserts that it suffers irreparable harm each day SFPC operates a similar business that looks like Little Caesars and sells all day, every day ready-for-pick-up pizza using Little Caesars' trade secret system. The threat of injury to Little Caesars' goodwill and business relationships with its customers is a cognizable harm. *Iowa Utils. Bd.*,109 F.3d at 426. The threat of a trade secret misappropriation can also be a threat of irreparable harm and is sufficient in this case for Little Caesars to carry its burden on this factor. *See Uncle B's Bakery, Inc. v. O'Rourke*, 920 F. Supp. 1405, 1434-46 (N.D. Iowa 1996) (concluding there was a threat of irreparable harm when former employee went

to work for competitor and there was a threatened trade secret misappropriation claim). For this reason, the court finds that the irreparable harm factor weighs in favor of granting Little Caesars' request for a preliminary injunction.

### III.  Balance of Harms

The third factor the court considers in deciding whether to issue a preliminary injunction is the balance between the possible harm to Little Caesars and the injury that an injunction could inflict on other interested parties. This element asks whether "the harm to the moving party outweighs the financial loss and damage to the reputation of the nonmoving party." *Aveda Corp. v. Evita Mktg., Inc.*, 706 F. Supp. 1419, 1431 (D. Minn. 1989) (citation omitted).

Little Caesars argues that the harm to SFPC is minimal because it would still be able to operate its business within the broad confines of the proposed injunction as a delivery and dine-in restaurant— it just could not use the "Hot-N-Ready" style of doing business. Comparatively, Little Caesars claims that it would suffer considerable harm because it endures more damage each day that SFPC misappropriates its trade secrets. SFPC contends that unlike Little Caesars, which operates over 3,000 locations across the world, SFPC only has one store that would be severely harmed through the imposition of an injunction. Docket 19 at 11. SFPC claims that if it is forced to scale back its menu it will sustain serious losses. Fischer testified that his ready-made pizza accounts for roughly half of his business at Pizza Patrol, and business has been steadily declining since he changed the store from Little Caesars to Pizza Patrol. Fischer states that he is unlikely to stay in business if the court enjoins SFPC

from selling this type of product. The court finds that the harm to both parties would be substantial, but the harm to SFPC's lone business would be greater than the harm to a national business like Little Caesars. For that reason, this factor weighs slightly in favor of denying the preliminary injunction request.

## IV.    Public Interest

The final *Dataphase* factor that this court must consider is the public's interest in the litigation. There is a public interest in protecting a company's property interest in its trade dress or secrets, but the public also has an interest in unrestrained competition and a free market economy. *See Calvin Klein Cosmetics Corp. v. Lenox Labs.*, 815 F.2d 500, 505 (8th Cir. 1987). In this case, because the court concluded that Little Caesars' likelihood of success on its claims is low, the public interest would tip slightly towards unrestrained competition. This factor also weighs in favor of denying the preliminary injunction.

Although Little Caesars demonstrated that it was likely to sustain irreparable harm absent a preliminary injunction, the court finds after balancing the four *Dataphase* factors that equity does not require preliminary relief, and it is unwarranted in this case. Most notable to the court's conclusion was that Little Caesars was unable to carry its burden to bring forth sufficient evidence to show that it is likely to succeed on the merits of its claims. *See CDI Energy Servs.*, 567 F.3d at 402 ("With no likelihood of success on the merits, there is little justification for granting a preliminary injunction regarding the trade-secret claim.").

**CONCLUSION**

The court determined, after weighing the *Dataphase* factors, that a preliminary injunction is not appropriate in this case. While Little Caesars could demonstrate that it was likely to suffer irreparable harm, Little Caesars did not carry its burden of showing that it is likely to succeed on the merits of its claims because it failed at this stage of the litigation to demonstrate through the evidence that its system is a protectable trade secret. Little Caesars also failed to show that SFPC was violating its trade dress rights because Little Caesars did not present any evidence of its typical or required dress and did not provide specific proof that SFPC infringed upon its trade dress rights. Accordingly, it is

ORDERED that Little Caesars' motion for a temporary restraining order or preliminary injunction (Docket 2) is denied.

Dated August 3, 2012.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE